OPINION of the Court, by
Judge Logan.
This is a suit for land upon conflicting titles. Buford was the complainant in the circuit court, and has the elder entry ; so that it is only necessary to decide upon the equity of his'daim.
His entry was made the 7th of January, 1783, “ on the north side of the main branch oí Benson, at the county hue, below a cane loop, near the trace going to the falls ; beginning on the bank of said line creek, at one large elm and two sugar trees, marked with a huge W, on each of the m ; thence west 600 poles, then worth, then east, end to the beginning tor quantity.1"
The tnaiked trees called lur in this entry cannot be dispensed with. These trees are proven to have been marked before the entry was made, and they are sufficiently identified by the evidence in the cause. But they are not proven to have been sufficiently notorious to support aa entry, unless aided by other calls.
it is therelore necessary to inquire, whether the other calls in the entry describe with such certainty the situation of those trees, that a subsequent locator could by reasonable diligence have found them at the time the entry was made ?
Benson was of general notoriety at that time. Besides, its description as the county line, which it is proven to have been, is farther evidence of the particular stream intended.
The trace going to the falls connected with the call for Benson, distinguishes ⅛ from other truces leading I© *115 the falls from other parts of the country. This trace is proven to have been generally notorious at the time the entry was made., and called the falls trace by the people at Harrodsburg, and in the upper part of the country. And by some it is proven to have been called Harrod’s trace by those residing in the lower part of the country.
The fact is, the evidence shows it was well known, when combined with the call for Benson, by either the falls or Harrod’s trace, or the trace going to one or the other of the places, Harrodsburg or the falls. At the falls no doubt it was called Harrod’s trace, in contradistinction to other paths leading from the falls ; and at Harrodsburg, it was for the same reason called the falls trace.
The usual trace leading from one to the other of Aos® two stations, could not have been mistaken, by the description of it as going to the falls or to Harrodsburg, from its crossing of Benson, unless some other trace also going to the falls rendered uncertain which was meant.
It is contended that there was such, To this it may be answered, that although there is some evidence in. the cause which proves that there was another main, leading trace from Benson, it also proves that it was, called Boone’s trace, and th.yt it lead to Boone’s station.
But the weight of evidence shows that the trace to Boone’s station was not made until after the date of the entry.
There is another call iti this'entry which would, when combined with the one for the trace, clearly designate the trace intended, if even others^had been as well proven as this one. The call is for “ a cane loop.” The proof in the cause, shows that it was the only place on the creek which filled the name ; that it united both a remarkable bend of the creek, and an unusual quantity of cane on said creek. And its distance from the trace * was not so far as to have rendered the finding of it inconvenient. If therefore another trace had been pro-vea in other respects equally answering the call, still the cane loop called for would have obviated all doubt as to the one intended by the locator.
*116 But m addition to this, it is proven that the cane loop was a place of considerable notoriety. Tac mosto! the witnesses knew the place, or had heard of it by that name. So that although its notoriety was not general before the entry was made, yet the circumstance of a considerable knowledge of it by that name gives weight to it as a good descriptive call.
Viewing then the creek, the cane loop and the trace as calls united, could the marked trees have been found on the north side and bank of said creek, by proper or reasonable search ?
The inquirer is directed by the entry below the cane loop on the north bank of the creek ; but how far he is to go below, there is no direction : it might be unreasonable to search from that to the mouth of the creek. The presumption however would be strong, that the trees were immediately below, or within a reasonable distance of the termination of the main bend with cane in it ; and a certain way given to direct the search by following the bank of the creek, would seem to render a more distant search below the cane loop not unreasonable. The case of Hite and others vs. M'Clenahan, Pr. Dec. 239, seems to have recognized as good, a similar call, viz. u above the mouth of Shawanee run but which for the uncertainty of other calls was deemed insufficient.
The distance of the trees called for in this entry below the cane loop, was about as far as the trees in that case were above the mouth of Shawanee run. It does not appear from the surveyor’s report, how far the beginning of the entry is below the cane loop; but it shows the distance to the mouth of the cane loop branch, to be 350 poles, and it is proven that the cane loop was mostly below the mouth of the branch. So that it reduced the inquiry to more limited bounds. From the bend in the creek as delineated in the surveyor’s report, the distance seems to be about two hundred poles. Samuel Woods, in his deposition, thought it between a quarter and a half mile : but the lower termination of the cane loop might have been somewhat indefinite ; and it is not material to the purpose of this inquiry, inasmuch as that uncertainty did not extend as far down as to the marked trees, and as the trees appear to have been within rea *117 sonable search of any part of said bend which could be considered as its lower termination.
Descriptive calls an an en*» try oughj: all m be considered as applying to the primary and main object of special location^ rather than to the body of the land* unless a contrary intension is dear.
General calía not to control locative calls.— Vide,, vol. I, p, 631.a, rule 6.
The court has entertained considerable doubt upon this call in the entry. But it seems, to give it a fair and liberal construction, as pointing out where one intended to lay his land ; that a subsequent locator could not have mistaken it to be in the neighborhood of the trace, but below the cane loop. The call in the entry “ near the trace,” &c. may with considerable propriety, be taken to apply to the cane loop, as describing it to be near the trace, rather than as applying to the land located. But it seems to the court, that all calls of description in an entry, ought rather to be considered as applying to the primary and main subject of description, than to other calls used merely for that purpose, unless it is otherwise clearly expressed.
It is conceived, that had the question occurred to a subsequent locator, where do those trees stand below the cane loop ; within what probable bounds ; is the mind to scan the whole creek below the “ loop” ? He would readily have answered his own doubts, that such was not the meaning of the locator ; it is not probable he would have thought of describing his beginning and special call, by an object far distant above j the presumption is, that the locator viewed himself in the neighborhood of those calls for the cane loop and trace. Hence the propriety of a search, because it does not appear unreasonable ; and the trees “ one large Elm,” and two sugar trees on the bank of the creek, would certainly be perceived in going down the creek ; and the large W. on each of them would designate the very ones intended.
The trees being found, the precise and locative calls for distance and courses, must control the more general and descriptive ones, by running west 600 poles, thence worth so far that by running east 600 poles, and to the beginning, will give 2000 acres.
Decree affirmed, &c,

 From the trace to the mouth of. the .cane loop branch, was about -⅛® poles on a áirefi line: aad freí» t|ie marked uses te the Highest'part of sf.3 trace about ;cc poles. • -